COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)
Attorneys for Plaintiff
*[Additional counsel appear on signature page.]*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

***DOCUMENT ELECTRONICALLY FILED***

| | |
|---|---|
| GAIL P. NUTTALL, Derivatively on Behalf of THE CHILDREN'S PLACE RETAIL STORES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> EZRA DABAH, NEAL GOLDBERG, SETH L. UDASIN, STEVEN BALASIANO, MARIO A. CIAMPI, MARK L. ROSE, RICHARD FLAKS, AMY HAUK, NINA L. MINER, MALCOLM L. ELVEY, SALLY FRAME KASAKS, CHARLES K. CROVITZ, ROBERT FISCH and STANLEY SILVERSTEIN, <br><br> Defendants, <br><br> – and – <br><br> THE CHILDREN'S PLACE RETAIL STORES, INC., a Delaware corporation, <br><br> Nominal Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

No.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, CONSTRUCTIVE FRAUD, CORPORATE WASTE, UNJUST ENRICHMENT, GROSS MISMANAGEMENT AND ACTION FOR ACCOUNTING

DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by a shareholder of The Children's Place Retail Stores, Inc. ("Children's Place" or the "Company"), on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Children's Place insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Children's Place insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since at least 1997.

2.     Between 1997 and the present, Defendants also caused Children's Place to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Children's Place carried with them an exercise price that was ***not less than*** the fair market value of Children's Place stock on the date of grant and issuance.

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be *backdated* to dates when the Company's shares were trading at or near the lowest price for that relevant period. By September 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars.

4.     Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as Delaware and New Jersey law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Children's Place to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Children's Place executives; and (iii) subjected Children's Place to potential liability from regulators, including the SEC and the IRS.

5.     Defendants' gross mismanagement and malfeasance over the past decade has exposed Children's Place and its senior executives to criminal and civil liability for issuing false and misleading financial statements. Specifically, Defendants caused or allowed Children's Place to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses, the Company's financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that

the Company's public disclosures presented an inflated view of Children's Place's earnings and earnings per share.

6. Defendants' malfeasance and mismanagement during the relevant period has wreaked hundreds of millions of dollars of damages on Children's Place. The Company's senior executives were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced stock options and to issue false financial statements to cover up their misdeeds. Defendants' breaches of fiduciary duties in the administration of the Company's stock option plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to the plans. The Company has now been mentioned as one of several companies likely to have manipulated options. This action seeks recovery for Children's Place against these faithless fiduciaries, as Children's Place's Board of Directors, as currently composed, is simply unable or unwilling to do so.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under New Jersey and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, waste of corporate assets, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

8.     This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

9.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.     Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Children's Place is located in and conducts its business in this District. Further, Defendants conduct business in this District, and certain of the Defendants are citizens of New Jersey and reside in this District.

## PARTIES

11.     Plaintiff Gail P. Nuttall residing at 21787 Vernon Ridge Drive, Ivanhoe, Illinois, is and at relevant times was a shareholder of Children's Place.

12.     Nominal party Children's Place is a Delaware corporation with its executive offices and principal place of business located at 915 Secaucus Road, Secaucus, New Jersey.

13.     Defendant Ezra Dabah ("Dabah") has served as Chairman of the Board of Children's Place since 1989 and as Chief Executive Officer ("CEO") of the Company

- 4 -

since 1991. Because of Dabah's positions, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Dabah participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Dabah sold 1.58 million shares of Children's Place stock for proceeds of $50.6 million during the relevant period.

14. Defendant Neal Goldberg ("Goldberg") has served as President of Children's Place since January 2004. Because of Goldberg's position, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Goldberg participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant

Goldberg sold 111,750 shares of Children's Place stock for proceeds of $6.4 million during the relevant period.

15.     Defendant Seth L. Udasin ("Udasin") was Vice President, Finance, Chief Financial Officer ("CFO") and Treasurer from 1998 until 2005. Because of Udasin's positions, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Udasin participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Udasin sold 57,191 shares of Children's Place stock for proceeds of $1.9 million during the relevant period.

16.     Defendant Steven Balasiano ("Balasiano") has served as Senior Vice President, Chief Administrative Officer and General Counsel of Children's Place since November 2004. Balasiano joined Children's Place in December 1995, and served as Vice President, General Counsel and Corporate Secretary since January 1996. Additionally, from 2000 until September 2003, Balasiano served as Vice President, Human Resources. Because of Balasiano's positions, he knew the adverse non-public information about the business of Children's Place, as well as its finances,

- 6 -

markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Balasiano participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Balasiano sold 119,118 shares of Children's Place stock for proceeds of $4.6 million during the relevant period.

17. Defendant Mario A. Ciampi ("Ciampi") had been Senior Vice President of the Company and President of Disney Stores, a licensed brand name of Children's Place, until his resignation in April 2006. Previously, Ciampi served as Vice President, Store Development from June 1996 until his promotion in July 2000 to Senior Vice President of Store Development and Logistics. He was named President of Disney Stores in November 2004. Because of Ciampi's positions, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Ciampi participated in the issuance of false and/or misleading statements, including the

preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Ciampi sold 224,886 shares of Children's Place stock for proceeds of $10.4 million during the relevant period.

18.    Defendant Mark L. Rose ("Rose") has served as Senior Vice President, Chief Supply Chain Officer of Children's Place since at least 1998. Because of Rose's position, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Rose participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Rose sold 133,579 shares of Children's Place stock for proceeds of $4.4 million during the relevant period.

19.    Defendant Richard Flaks ("Flaks") has served as Senior Vice President, Planning, Allocation and Information Technology of Children's Place since November 2004. Flaks joined the Company in March 2003 as Vice President, Planning, Allocation and Information Technology and served in this capacity until his promotion to his current position. Because of Flaks' position, he knew the adverse

- 8 -

non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Flaks participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Flaks sold 11,000 shares of Children's Place stock for proceeds of $415,350 during the relevant period.

20.     Defendant Amy Hauk ("Hauk") has served as Senior Vice President, General Merchandise Manager, Disney Stores, the licensed brand name of Children's Place, since October 2005. Previously, Hauk served as Vice President, Merchandising of Children's Place from April 2002, until she was promoted to Senior Vice President, General Merchandise Manager of Children's Place in November 2003. Hauk served in this capacity until her promotion in October 2005. Because of Hauk's positions, she knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to her in connection therewith. During the relevant period,

Hauk participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on her knowledge of material non-public information regarding the Company, defendant Hauk sold 21,600 shares of Children's Place stock for proceeds of $786,672 during the relevant period.

21.     Defendant Nina L. Miner (Miner") has served as Senior Vice President, Chief Creative Officer of the Company since 2005. Miner joined Children's Place as Vice President, Design and Product Development in 1990, and served in this capacity until she became Vice President, Trend Development in August 1998. In January 2001, she was promoted to Vice President, Design and Trend Development and served in this capacity until she was promoted in 2005 to her current position. Defendant Miner is the sister-in-law of defendant Dabah and is the daughter of defendant Silverstein.     Because of Miner's positions, she knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to her in connection therewith. During the relevant period, Miner participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on her knowledge of material

non-public information regarding the Company, defendant Miner sold 142,500 shares of Children's Place stock for proceeds of $3.4 million during the relevant period.

22.     Defendant Malcolm L. Elvey ("Elvey") has been a director of Children's Place since 2002. Because of Elvey's position, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member (Chairman) of the Audit Committee and as a member of the Corporate Governance Committee, defendant Elvey caused or allowed the dissemination of the improper public statements described herein. As a member of the Compensation Committee, defendant Elvey controlled the other Defendants' stock option awards. During the relevant period, Elvey participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Elvey sold 5,200 shares of Children's Place stock for proceeds of $256,100 during the relevant period.

23.     Defendant Sally Frame Kasaks ("Kasaks") has been a director of Children's Place since 2000, and additionally has served as lead director since 2005. Because of Kasaks' position, she knew the adverse non-public information about the

business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith. As a member of the Compensation Committee, defendant Kasaks controlled the other Defendants' stock option awards. As a member (Chairman) of the Corporate Governance Committee and as a member of the Audit Committee, defendant Kasaks caused or allowed the dissemination of the improper public statements described herein. During the relevant period, Kasaks participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on her knowledge of material non-public information regarding the Company, defendant Kasaks sold 5,000 shares of Children's Place stock for proceeds of $234,950 during the relevant period.

24. Defendant Charles K. Crovitz ("Crovitz") has been a director of Children's Place since 2004. Because of Crovitz's position, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member (Chairman) of the Compensation Committee, defendant Crovitz controlled the other Defendants'

stock option awards. During the relevant period, Crovitz participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

25. Defendant Robert Fisch ("Fisch") has been a director of Children's Place since 2004. Because of Fisch's position, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member of the Audit Committee, defendant Fisch caused or allowed the dissemination of the improper public statements described herein. During the relevant period, Fisch participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

26. Defendant Stanley Silverstein ("Silverstein") has been a director of Children's Place since 1996. Because of Silverstein's position, he knew the adverse non-public information about the business of Children's Place, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant

- 13 -

period, Silverstein participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Silverstein is the father-in-law of defendant Dabah and the father of defendant Miner. Based on his knowledge of material non-public information regarding the Company, defendant Silverstein sold 841,950 shares of Children's Place stock for proceeds of $25.1 million during the relevant period.

27.     The defendants identified in ¶¶13 and 22-26 are referred to herein as the "Director Defendants." The defendants identified in ¶¶13-21 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶13-23 and 26 are referred to herein as the "Insider Selling Defendants."

## DEFENDANTS' DUTIES

28.     Each officer and director of Children's Place named herein owed the Company and Children's Place shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Children's Place's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as directors of Children's Place. Further, the misconduct of Children's Place's officers has been ratified by Children's Place's Board, which has failed to take any legal action on behalf of the Company against them.

29. By reason of their positions as officers, directors and fiduciaries of Children's Place and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Children's Place and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Children's Place in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Children's Place and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Children's Place to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

30. Because of their positions of control and authority as directors or officers of Children's Place, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; and (ii) willingness to cause Children's Place to disseminate false Proxy Statements for fiscal 1998-2006, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to unilaterally backdate their stock options grants in order to manipulate the strike price of the stock options they received. Because of

their positions with Children's Place, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Children's Place shareholders and the financial markets but failed to do so.

31. Between 1998 and 2006, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was *not less than* the fair market value of Children's Place stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date. However, Defendants concealed until September 2006 that the stock option grants were repeatedly and consciously *backdated* to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period. Plaintiff seeks to have all of the unexercised options granted to defendants between 1998 and 2002 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

32. To discharge their duties, the directors of Children's Place were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of Children's Place. By virtue of such duties, the officers and directors of Children's Place were required, among other things, to:

(a)     manage, conduct, supervise and direct the business affairs of Children's Place in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of Children's Place);

(b)     neither engage in self-dealing nor knowingly permit any officer, director or employee of Children's Place to engage in self-dealing;

(c)     neither violate nor knowingly permit any officer, director or employee of Children's Place to violate applicable laws, rules and regulations;

(d)     remain informed as to the status of Children's Place's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor to the Company's shareholders;

(e)     prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

(f)     establish and maintain systematic and accurate records and reports of the business and affairs of Children's Place and procedures for the reporting of the

- 17 -

business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(g) maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that Children's Place's financial statements – including its expenses, accounting for stock option grants and other financial information – would be accurate and the actions of its directors would be in accordance with all applicable laws;

(h) exercise control and supervision over the public statements to the securities markets and trading in Children's Place stock by the officers and employees of Children's Place; and

(i) supervise the preparation and filing of any financial reports or other information required by law from Children's Place and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of Children's Place and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

33. Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. As a result of Defendants' illegal actions and course of conduct during the relevant period. Children's Place has expended and will continue

- 18 -

to expend significant sums of money. Such expenditures include, but are not limited to:

(a)  improvidently paid executive compensation;

(b)  increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

(c)  costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(d)  incurring possible IRS penalties for improperly reporting compensation.

34.  These actions have irreparably damaged Children's Place's corporate image and goodwill. For at least the foreseeable future, Children's Place will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Children's Place's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## AIDING AND ABETTING AND CONCERTED ACTION

35.  In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of their common plan.

36.  During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal

the fact that the Company was allowing its directors and senior officers to divert

millions of dollars to themselves and causing Children's Place to misrepresent its

financial results; (ii) maintain Defendants' executive and directorial positions at

Children's Place and the profits, power and prestige which Defendants enjoyed as a

result of these positions; (iii) deceive the investing public, including shareholders of

Children's Place, regarding Defendants' compensation practices and Children's

Place's financial performance.

37.     The purpose and effect of Defendants' common course of conduct was,

among other things, to disguise Defendants' violations of law, breaches of fiduciary

duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment,

to conceal adverse information concerning the Company's operation and financial

condition and to artificially inflate the price of Children's Place common stock so they

could dispose of millions of dollars of their own Children's Place stock, and enhance

their executive and directorial positions and receive the substantial compensation they

obtained as a result thereof.

38.     Defendants accomplished their common enterprise and/or common

course of conduct by causing the Company to purposefully and/or recklessly engage

in the option backdating scheme alleged herein and misrepresent Children's Place's

financial results.  Each of the Defendants was a direct, necessary, and substantial

participant in the common enterprise and/or common course of conduct complained of

herein.

39. Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

40. Children's Place is a specialty retailer of children's merchandise. The Company designs, contracts to manufacture and sells high-quality, value-priced merchandise under its proprietary Children's Place and licensed Disney Store brand names. The Company is a specialty retailer of apparel and accessories for children from newborn to ten years of age.

41. Throughout the relevant period, Defendants caused Children's Place to grant them millions of stock options permitting them to buy Children's Place stock for pennies on the dollar which they could in turn sell as the Company's stock price increased. A stock option gives the holder the right to buy a stock at a certain price in the future. Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

42.    However, many of the hundreds of thousands of options granted to Children's Place's executives had a hidden, valuable component: they were misdated, often making them even more significantly valuable. The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a grant as of a certain date, but after that date are changes in the grantees or amounts to grantees, and although the work is not complete on those grants as of the stated grant date, that date is nonetheless used).

### STOCK OPTION GRANTS

43.    Certain of Children's Place's manipulative stock option grants are described below:

**1998 Option Grants**

44.    Defendants dated many of Children's Place's 1998 option grants to top officers as of October 21, 1998 at $9.75 per share, right before a major increase in the stock price. Indeed, within several days, the stock would close above $12 per share

and within a couple of weeks would close above $14 per share. Defendant Miner and former officer Diane Timbanard received 10,000 and 25,000 options, respectively, at this $9.75 exercise price.

**2000 Option Grants**

45.     Defendants dated many of Children's Place's 2000 option grants to top officers as of July 10, 2000 at $20.31 per share – near the low of the month. The stock would close at $26.44 per share by July 12th and reach $27.81 per share later in the month. Defendant Ciampi received 25,000 options at this $20.31 exercise price. Defendants dated other Children's Place 2000 option grants to top officers as of November 7, 2000 at $19.03 per share – near the low of the month. Within days, the stock reached $22 per share and reached $26.50 per share by month end. Defendants Ciampi, Miner and Rose and former officer Timbanard received 15,000, 12,000, 18,000 and 10,000 options, respectively, at this $19.03 exercise price.

**2001 Option Grants**

46.     Defendants dated all of Children's Place's 2001 option grants to top officers as of October 31, 2001 at $23.94 – right before a major increase in the stock price. The stock closed at $25.66, five days after the grant. Defendants Ciampi, Miner, Rose and Udasin received 18,000, 12,000, 12,000 and 12,000 options, respectively, at this $23.94 exercise price.

47.     Below are certain of Children's Place's stock option grants which occurred right before significant stock price increases:

- 23 -



**The Childrens Place Retail Stores**

September 21, 1998 - December 11, 1998



**The Childrens Place Retail Stores**

June 9, 2000 - August 11, 2000

- 24 -



The Childrens Place Retail Stores
September 28, 2001 - November 30, 2001

48.      Complicating matters and magnifying the harm to Children's Place, during the relevant period, Children's Place's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

49.      Specifically, in many instances the reported dates Children's Place stock options were granted differed from the dates on which the options appear to have been

- 25 -

actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose.

50. Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Children's Place a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Children's Place faced because of its deficient internal controls. Furthermore, defendants who were members of the Audit Committee during the relevant period, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. Defendants who were officers of Children's Place had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover,

the Director Defendants had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board. Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Children's Place to the investing public and the Company's shareholders during the relevant period.

51.     Specifically, since at least 1998, Defendants have caused Children's Place to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings as follows:

| YEAR | REPORTED EARNINGS (in millions) | REPORTED DILUTED EARNINGS PER SHARE FROM CONTINUING OPERATIONS |
|---|---|---|
| 1998[1] | $5.24 | $0.29 |
| 1999 | $20.66 | $0.80 |
| 2000 | $35.05 | $1.32 |
| 2001 | $42.69 | $1.60 |
| 2002 | $46.58 | $1.73 |
| 2003 | $8.08 | $0.35 |
| 2004 | $22.91 | $0.86 |
| 2005 | $43.28 | $1.67 |
| 2006 | $65.58 | $2.38 |

52.     Moreover, throughout the relevant period certain Defendants exercised many of these stock options contributing to their ability to sell over $108.8 million

---

[1]     Children's Place's fiscal year ends the last Saturday in January.

worth of Children's Place stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| DABAH | 11/20/98 – 6/9/06 | 1,589,910 | $50,614,716 |
| GOLDBERG | 11/23/05 – 6/5/06 | 111,750 | $6,451,053 |
| UDASIN | 8/16/99 – 3/23/04 | 57,191 | $1,921,317 |
| BALASIANO | 5/17/99 – 4/21/06 | 119,118 | $4,634,060 |
| CIAMPI | 5/17/99 – 4/19/06 | 224,886 | $10,421,199 |
| ROSE | 6/2/99 – 3/28/05 | 133,579 | $4,486,426 |
| FLAKS | 11/15/04 – 1/19/05 | 11,000 | $415,350 |
| HAUK | 1/10/05 | 21,600 | $786,672 |
| MINER | 6/21/99 – 1/10/05 | 142,500 | $3,439,738 |
| ELVEY | 6/9/05 | 5,200 | $256,100 |
| KASAKS | 7/19/05 | 5,000 | $234,950 |
| SILVERSTEIN | 4/5/99 – 5/24/05 | 841,950 | $25,171,449 |
| TOTAL | | 3,263,684 | $108,833,030 |

53. On September 7, 2006, the Company issued a press release and subsequently filed a Form 8-K with the SEC announcing that it would be delaying the filing of its Form 10-Q for the quarter ended July 29, 2006, as a result of an internal investigation into the Company's past stock option granting practices. The release stated in part:

> The Children's Place Retail Stores, Inc. announced today that it will delay the filing of its Quarterly Report on Form 10-Q for the quarter ended July 29, 2006 with the Securities and Exchange Commission. This delay will allow time for the Company to complete an analysis of the accounting treatment for its past stock option grants and to determine the extent of any corrections that may be required to its previously reported financial results.

> On August 24, 2006, at the request of the Company's audit committee, the Company's outside counsel began an investigation into the Company's stock option practices. Outside counsel delivered its

findings to the audit committee on September 6, 2006. The investigation found various instances in which the Company's records did not correctly reflect the legal grant date for stock options granted to employees and directors of the Company, resulting in errors in the dating of these stock options. The report concluded that, except for one occasion in 2001, as to which the report was inconclusive, the errors in the granting and recording of stock options were unintentional.

The Company is currently engaged in an analysis of the accounting treatment of its stock option grants since its initial public offering in 1997 to determine the extent of any corrections that may be required to its previously reported financial results. The Company cannot predict when this analysis will be completed. While the Company expects that some corrections to its reported financial results will be necessary, it is not yet able to estimate the aggregate amount of any such corrections or whether such corrections would be material. Accordingly, the Company has not yet determined whether any corrections would be made by recording a non-cash charge to earnings for the second quarter of 2006, or whether it may be necessary to restate its previously filed financial statements for prior fiscal years and the first quarter of fiscal 2006.

54. In effect, during the relevant period, the Defendants caused Children's Place's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Children's Place to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Children's Place's earnings and restated earnings.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

55.     Plaintiff brings this action derivatively in the right and for the benefit of Children's Place to redress injuries suffered and to be suffered by Children's Place as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

56.     Plaintiff will adequately and fairly represent the interests of Children's Place and its shareholders in enforcing and prosecuting its rights.

57.     Plaintiff is an owner of Children's Place stock and was an owner of Children's Place stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

58.     Based upon the facts set forth throughout this Complaint, applicable law and the longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the Children's Place Board of Directors to institute this action against the officers and members of the Children's Place Board of Directors is excused as futile. A pre-filing demand would be a useless and futile act because:

         (a)     The members of Children's Place's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the

- 30 -

corporation for the violations of law complained of herein. These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

(b)     The Children's Place Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Children's Place's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, or conversations and connections with other corporate officers, employees, and directors and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting. Pursuant to their specific duties as Board members, the Director Defendants are charged with the management of the Company and to conduct its business affairs. Defendants breached the fiduciary duties that they owed to Children's Place and its shareholders in that they failed to prevent and correct the improper stock option granting and financial reporting. Certain directors are also dominated and controlled by other directors and cannot act independently of them. Thus, the Children's Place Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members

- 31 -

participated personally in the wrongdoing or are dependent upon other Defendants who did.

      (c)    The acts complained of constitute violations of the fiduciary duties owed by Children's Place's officers and directors and these acts are incapable of ratification.

      (d)    The members of Children's Place's Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites derived therefrom, and are incapable of exercising independent objective judgment in deciding whether to bring this action.

      (e)    Any suit by the current directors of Children's Place to remedy these wrongs would likely further expose the liability of Defendants under the federal securities laws, which could result in additional civil and/or criminal actions being filed against one or more of the Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

      (f)    Children's Place has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or others who were responsible for that wrongful conduct to attempt to recover for Children's Place any part of the damages Children's Place suffered and will suffer thereby.

(g)     In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves and the other Defendants, requiring them to expose themselves and their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties. This they will not do.

(h)     Children's Place's current and past officers and directors are protected against personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance which they caused the Company to purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Children's Place. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions which eliminate coverage for any action brought directly by Children's Place against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Children's Place, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

(i)     In order to bring this action for breaching their fiduciary duties, the members of the Children's Place Board would have been required to sue themselves

- 33 -

and/or their fellow directors and allies in the top ranks of the Company, who are their personal friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do.

59. Plaintiff has not made any demand on shareholders of Children's Place to institute this action since such demand would be a futile and useless act for the following reasons:

(a) Children's Place is a publicly traded company with approximately 28 million shares outstanding, and thousands of shareholders;

(b) Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON CHILDREN'S PLACE'S FINANCIAL STATEMENTS

### The Fiscal 1998 Form 10-K

60. On or about May 1, 1998, the Company filed its fiscal 1998 Form 10-K with the SEC. The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1998 Form 10-K included Children's Place's 1998 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a

result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1999 Form 10-K**

61.    On or about February 24, 1999, the Company filed its fiscal 1999 Form 10-K with the SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K included Children's Place's 1999 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2000 Form 10-K405**

62.    On or about April 28, 2000, the Company filed its fiscal 2000 Form 10-K405 with the SEC. The fiscal 2000 Form 10-K405 was simultaneously distributed to shareholders and the public. The fiscal 2000 Form 10-K405 included Children's Place's 2000 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2001 Form 10-K405**

63.    On or about May 2, 2001, the Company filed its fiscal 2001 Form 10-K405 with the SEC. The fiscal 2001 Form 10-K405 was simultaneously distributed to

shareholders and the public. The fiscal 2001 Form 10-K405 included Children's Place's 2001 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2002 Form 10-K**

64.     On or about April 8, 2002, the Company filed its fiscal 2002 Form 10-K with the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2002 Form 10-K included Children's Place's 2002 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2003 Form 10-K**

65.     On or about May 1, 2003, the Company filed its fiscal 2003 Form 10-K with the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2003 Form 10-K included Children's Place's 2003 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2004 Form 10-K**

66.    On or about April 15, 2004, the Company filed its fiscal 2004 Form 10-K with the SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2004 Form 10-K included Children's Place's 2004 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2005 Form 10-K**

67.    On or about April 14, 2005, the Company filed its fiscal 2005 Form 10-K with the SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2005 Form 10-K included Children's Place's 2005 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2006 Form 10-K**

68.    On or about April 12, 2006, the Company filed its fiscal 2006 Form 10-K with the SEC. The fiscal 2006 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2006 Form 10-K included Children's Place's 2006 financial statement which were materially false and misleading and presented in

violation of GAAP, due to improper accounting for the backdated stock options. As a result, Children's Place's compensation expense was understated and its net earnings were overstated.

## DEFENDANTS' SCHEME BEGINS TO UNRAVEL

69.     The 1998-2006 Proxy Statements concealed Defendants' option backdating scheme.    Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between at least 1998 and 2006. In fact, it was not until September 2006 that shareholders learned that the Proxy Statements which they had relied upon for year were false and misleading. Defendants have been unjustly enriched at the expense of Children's Place, which has received and will receive less money from the Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

70.     Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions.    Given the many times Children's Place's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

71. As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Children's Place, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

72. On September 7, 2006, the Company issued a press release and subsequently filed a Form 8-K with the SEC announcing that it would be delaying the filing of its Form 10-Q for the quarter ended July 29, 2006, as a result of an internal investigation into the Company's past stock option granting practices.

## TOLLING OF THE STATUTE OF LIMITATIONS

73. The Counts alleged herein are timely. As an initial matter, Defendants wrongfully concealed their manipulation of the stock option grants, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Children's Place's public investors that Children's Place's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

74. Finally, as fiduciaries of Children's Place and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from

Children's Place's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that the Children's Place Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

**COUNT I**

**Violations of §14(a) of the Exchange Act Against
All Defendants**

75.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

76.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

77.     The 1998-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing Children's Place to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1998.

78.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

79.    The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

80.    The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Accounting

81.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.    At all relevant times, the Defendants, as directors and/or officers of Children's Place, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

83.    In breach of their fiduciary duties owed to Children's Place and its shareholders, the Defendants caused Children's Place, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Children's Place. By this wrongdoing, the Defendants breached their fiduciary duties owed to Children's Place and its shareholders.

84.     The Defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Defendants.

85.     As a result of Defendants' misconduct, Children's Place has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

86.     Plaintiff demands an accounting be made of all stock options grants made to Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other exercise of backdated stock option grants received by the Defendants.

## COUNT III

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

87.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.     Each of the Defendants agreed to and did participate with Dabah and Ciampi and the other Defendants and/or aided and abetted one another in a deliberate

- 42 -

course of action designed to divert corporate assets in breach fiduciary duties the Defendants owed to the Company.

89. The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Children's Place and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Children's Place and its shareholders.

90. As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Children's Place and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

91. By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Children's Place and its public shareholders.

92. As a proximate result of Defendants' conduct, in concert with Dabah and Ciampi, Children's Place has been injured and is entitled to damages.

### COUNT IV

### Abuse of Control Against All Defendants

93. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Children's Place, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Children's Place. As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding Children's Place.

95.     Defendants' conduct constituted an abuse of their ability to control and influence Children's Place.

96.     By reason of the foregoing, Children's Place has been damaged.

## COUNT V

## Gross Mismanagement Against All Defendants

97.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

98.     Defendants had a duty to Children's Place and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Children's Place.

99.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Children's Place in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in

- 44 -

the management and administration of Children's Place's affairs and in the use and preservation of Children's Place's assets.

100. During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Children's Place to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Children's Place, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Children's Place.

101. By reason of the foregoing, Children's Place has been damaged.

## COUNT VI

### Constructive Fraud Against All Defendants

102. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

103. As corporate fiduciaries, Defendants owed to Children's Place and its shareholders a duty of candor and full accurate disclosure regarding the true state of Children's Place's business and assets and their conduct with regard thereto.

104. As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Children's Place's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Children's Place. Thus they have committed constructive fraud and violated their duty of candor.

- 45 -

105.    By reason of the foregoing, Children's Place has been damaged.

## COUNT VII

### Corporate Waste Against All Defendants

106.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Children's Place to waste valuable corporate assets.

108.    As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT VIII

### Unjust Enrichment Against All Defendants

109.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

110.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Children's Place, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

111.    All the payments and benefits provided to the Defendants were at the expense of Children's Place. The Company received no benefit from these payments. Children's Place was damaged by such payments.

112. Certain of the Defendants sold Children's Place stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Children's Place. A constructive trust for the benefit of the Company should be imposed thereon.

## COUNT IX

### Against the Officer Defendants for Rescission

113. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

114. As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Children's Place entered into during the relevant period were obtained through Defendants' fraud, deceit and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by Children's Place shareholders and filed with the SEC.

115. All contracts which provide for stock option grants between the Officer Defendants and Children's Place and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT X

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

116.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.  At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Children's Place common stock on the basis of such information.

118.  The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Children's Place common stock.

119.  At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of Children's Place common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

120.  Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.     Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.     Directing Children's Place to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance Policies:

(i)     a proposal requiring that the office of CEO of Children's Place and Chairman of the Children's Place Board of Directors be permanently held by separate individuals and that the Chairman of the Children's Place Board meets rigorous "independent" standards;

- 49 -

(ii)    a proposal to strengthen the Children's Place Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii)    appropriately test and then strengthen the internal audit and control functions;

(iv)    rotate independent auditing firms every five years;

(v)    control and limit insider stock selling and the terms and timing of stock option grants; and

(vi)    reform executive compensation.

D.    Ordering the imposition of a constructive trust over Defendants' stock options and any proceeds derived therefrom;

E.    Awarding punitive damages;

F.    Awarding costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees; and

G.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 9, 2007

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN

_____
        PETER S. PEARLMAN

Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: 610/225-2677
610/225-2678 (fax)

Attorneys for Plaintiff

S:\CptDraft\Derivative\Cpt Childrens Place Derv.doc

## THE CHILDREN'S PLACE RETAIL STORES, INC. VERIFICATION

I, Gail P. Nuttall, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _12- 16 - 06_        _Gail P. Nuttall_
                                   SIGNATURE