# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL P. NUTTALL and LESLIE LINDEMAN, Derivatively on Behalf of THE CHILDREN'S PLACE RETAIL STORES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> EZRA DABAH, et al., <br><br> Defendants, <br><br> – and – <br><br> THE CHILDREN'S PLACE RETAIL STORES, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. 2:07-cv-121 (SDW) (MCA) <br><br><br> Hon. Susan D. Wigenton, U.S.D.J. <br><br><br> **STIPULATION OF SETTLEMENT** |

This Stipulation of Settlement (the "Stipulation"), dated as of May 21, 2008, is made and entered into by and among the following Settling Parties (as defined in Section V hereof) to the above-captioned action (the "Action," as defined in Section V hereof): (i) Plaintiffs Gail P. Nuttall ("Nuttall") and Leslie Lindeman ("Lindeman"), derivatively on behalf of The Children's Place Retail Stores, Inc. ("TCP" or the "Company"); and (ii) TCP and the Individual Defendants (as defined in Section V hereof), by and through their counsel of record. The Stipulation is intended by the Settling Parties to fully, finally and

forever resolve, discharge and settle the Released Claims (as defined in Section V hereof), upon and subject to the terms and conditions hereof.

**WHEREAS:**

## I.   FACTUAL BACKGROUND OF THE ACTION

On September 7, 2006, the Company announced that it would be delaying the filing of its Report on Form 10-Q for the fiscal quarter ended July 29, 2006, as a result of an internal investigation into the Company's historical stock option granting practices commenced by the audit committee (the "Audit Committee") of the Company's board of directors (the "Board"). On November 30, 2006, the Company announced that the Board had formed a special committee (the "Special Committee") to continue the independent investigation commenced by the Audit Committee. The Special Committee was assisted by independent counsel in its review of the Company's stock option practices.

The Action was initiated on January 9, 2007, when Plaintiff Nuttall filed the above-captioned shareholder derivative action in the United States District Court for the District of New Jersey (the "Court"). Generally, Nuttall alleged that the Company's current and former officers and directors (the "Individual Defendants," as defined in Section V hereof) breached their fiduciary duties to the Company because, *inter alia*, they allegedly caused backdated, spring-loaded, or

otherwise manipulated stock options to be granted to several of the Company's senior officers and directors over a multi-year period.

On January 31, 2007, the Company issued a press release announcing the results of the Special Committee's investigation.  Among other things, the press release stated that, based on the results of the Special Committee's independent investigation and the Company's own additional review, the Company's management concluded that "incorrect measurement dates were used for financial reporting purposes in respect to option grants."  In the press release, the Company also announced that, in light of the Special Committee's findings, it would restate its previously issued financial statements for fiscal years 2003-2005 and for the first fiscal quarter of 2006.

On March 19, 2007, TCP and the Individual Defendants moved to dismiss the Action.  On June 15, 2007, Plaintiff Nuttall filed a First Amended Verified Shareholder Derivative Complaint.  On August 23, 2007, the Court entered an Order setting a schedule for Plaintiff Nuttall to file a Second Amended Verified Shareholder Derivative Complaint, which schedule was based on the anticipated filing of TCP's restated financial results.  On December 5, 2007, the Company filed its restatement and, on February 4, 2008, Plaintiff Nuttall filed a Second Amended Verified Shareholder Complaint.  Plaintiff Nuttall was joined in doing so by Plaintiff Lindeman.

## II.   DISCOVERY, INVESTIGATION AND RESEARCH CONDUCTED BY PLAINTIFFS' COUNSEL

Plaintiffs' Counsel (as defined in Section V hereof) have conducted an extensive investigation during the development and prosecution of the Action. This investigation has included, *inter alia*, (i) inspecting, reviewing and analyzing the Company's public filings; (ii) researching corporate governance issues; (iii) participating in teleconferences with Defendants' Counsel; (iv) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; and (v) employing a financial expert to conduct an analysis of the option grants at issue.

## III.   NO ADMISSION OF WRONGDOING BY DEFENDANTS

Defendants deny that they have committed or intended to commit any wrongdoing, violations of law or breaches of duty to TCP or its stockholders or otherwise, and maintain that their conduct was at all times proper and in compliance with all applicable provisions of law.  Each of the Individual Defendants denies and continues to deny the allegations concerning any alleged breach of fiduciary duty.  The Individual Defendants have further asserted and continue to assert that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of the Company and its stockholders.  Defendants have entered into the Stipulation solely to eliminate the

4

burden, risk, and expense of further litigation of the claims settled herein, and to fully and finally resolve all claims asserted in the Action.

This Stipulation and all negotiations, discussions and proceedings in connection herewith shall not be deemed or constitute a presumption, concession or an admission by any Party of any fault, liability or wrongdoing by them, and shall not be interpreted, construed, deemed, involved, offered, or received in evidence or otherwise used by any Person in the Action, or in any other action or proceeding, whether civil, criminal or administrative, except in connection with any proceeding to enforce the terms of this Stipulation.  If the Settlement does not receive Final approval of the Court, the Parties shall revert to their respective litigation positions as if this Stipulation, and all negotiations, discussions and proceedings in connection herewith, never existed.

## IV.   PLAINTIFFS' CLAIMS AND BENEFITS OF THE SETTLEMENT

Plaintiffs believe that the claims asserted in the Action have merit, but recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals.  Plaintiffs' Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex shareholder litigation such as the Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs' Counsel also are mindful of the problems of proof under, and possible

defenses to, the claims asserted in the Action. Based on these considerations, among others, Plaintiffs' Counsel believe that the settlement set forth in this Stipulation confers substantial benefits upon Plaintiffs, TCP and Current TCP Stockholders (as defined in Section V herein).

## V.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs on behalf of themselves and derivatively on behalf of TCP, and Defendants, by and through their respective counsel, that, subject to the approval of the Court, the Action and the Released Claims (as defined below) shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, as to all Defendants, upon and subject to the terms and conditions of the Stipulation, as follows:

1.   **<u>Definitions</u>**

As used herein, the following terms have the meanings specified below:

a.   The "Action" means the shareholder derivative action captioned as *Nuttall, et al. v. Dabah, et. al.*, No. 2:07-CV-00121, filed in the U.S. District Court for the District of New Jersey.

b.   "Current TCP Stockholders" means any record or beneficial holder of TCP common stock as of May 21, 2008.

      c.     "Defendants" means nominal defendant TCP, and any of its subsidiaries, together with the Individual Defendants (as defined below).

      d.     "Defendants' Affiliates" means any and all of Defendants' respective present, former and future officers, directors, employees, managers, members, managing members, fiduciaries, managing directors, agents, managing agents, attorneys, legal counsel, advisors, consultants, insurers, co-insurers, reinsurers, accountants, auditors, trustees, underwriters, financial advisors, commercial bank lenders, investment bankers, associates, representatives, affiliates, parents, subsidiaries, partnerships, member firms, partners, joint ventures, limited liability companies, corporations, divisions, shareholders, principals, trusts, foundations, family members, beneficiaries, distributees, heirs, executors, personal representatives, estates, administrators, predecessors, successors and assigns, and their respective former, current and future direct or indirect equity holders, controlling persons, affiliates, stockholders, general or limited partners or partnerships, or assignees and including but not limited to any directors, officers, agents, partners, members, managers, or employees of any of the foregoing.

      e.     "Defendants' Counsel" means Weil, Gotshal & Manges LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Sills Cummis & Gross P.C.; Dechert LLP; Edwards Angell Palmer & Dodge LLP; and Heller Ehrman LLP.

   **f.** "Effective Date" means the date upon which all of the conditions set forth in Section IX below shall have been satisfied.

   **g.** "Final" means:  (i) the date of final affirmance on an appeal of the Judgment (as defined below), the expiration of the time for a petition for or a denial of a writ of certiorari to review the Judgment and, if certiorari is granted, the date of final affirmance of the Judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the Court's Judgment approving the Stipulation substantially in the form of Exhibit A attached hereto, *i.e.*, thirty (30) days after entry of the Judgment. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of allocation and/or application for attorneys' fees, costs or expenses, shall not in any way delay or preclude the Judgment from becoming Final.

   **h.** "Individual Defendants" means Steven Balasiano, Mario A. Ciampi, Charles K. Crovitz, Ezra Dabah, Malcolm L. Elvey, Robert Fisch, Richard Flaks, Neal Goldberg, Amy Hauk, Clark Hinkley, Sally Frame Kasaks, John F.

Megrue, Nina L. Miner, David J. Oddi, Mark L. Rose, Stanley Silverstein and Seth L. Udasin.[1]

     **i.**     "Judgment" means the Final Judgment Approving Settlement And Order Of Dismissal to be issued by the Court, substantially in the form attached hereto as Exhibit A.

     **j.**     "Notice" means the Notice Of Proposed Settlement Of Derivative Litigation, Hearing Thereon, And Right To Appear that is to be published by TCP in the form of an attachment to a current report filed with the Securities and Exchange Commission (the "SEC") on Form 8-K, substantially in the form of Exhibit B attached hereto or as modified pursuant to agreement of the Parties or order of the Court.

     **k.**     "Parties" means Plaintiffs and Defendants.

     **l.**     "Person" means any individual, corporation, limited liability company, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

---

[1] Individual Defendant Diane Timbanard, now deceased, was voluntarily dismissed from the Action pursuant to a stipulation between the Parties.

**m.**    "Plaintiffs" means the individual plaintiffs who brought the Action derivatively on behalf of TCP, namely Gail P. Nuttall and Leslie Lindeman, together with any of their agents, heirs, assigns, predecessors and/or successors.

**n.**    "Plaintiffs' Counsel" means The Weiser Law Firm, P.C., 121 N. Wayne Ave., Suite 100, Wayne, PA 19087; and Cohn Lifland Pearlman Herrmann & Knopf LLP, Park 80 Plaza West-One, Saddle Brook, NJ 07663.

**o.**    "Preliminary Approval" means the date on which the Court enters the Preliminary Approval Order, substantially in the form attached hereto as Exhibit C, preliminarily approving the settlement.

**p.**    "Released Claims" shall collectively mean all claims (including "Unknown Claims," as defined below), demands, rights, liabilities, suits, matters, transactions, issues and causes of action of every nature and description whatsoever, known or unknown, whether based in federal, state, local, statutory or common law, or any other law, rule or regulation, whether or not concealed or hidden, asserted or that might have been asserted by Plaintiffs or by Current TCP Stockholders on behalf of TCP, or any of them, against each and every Defendant in the Action, that are based upon or related in any way to the facts, circumstances, transactions, events, occurrences, disclosures, statements, omissions, acts or failures to act which were alleged or could have been alleged in the Action, including, without limitation, claims for violations of the federal securities laws,

breach of fiduciary duty, fraud, self-dealing, misrepresentation (whether intentional, negligent or innocent), omission (whether intentional, negligent or innocent), mismanagement, gross mismanagement, corporate waste, abuse of control, unjust enrichment, breach of contract, negligence, gross negligence, or violations of any state statutes, Company policies and procedures, rules or regulations or any other source of legal or equitable obligation of any kind or description, in whatever forum. The term "Released Claims" does not include the claims asserted in the actions captioned *Hall v. The Children's Place Retail Stores, Inc., et al.*, No. 07-cv-8252 (S.D.N.Y.), and *Noboa v. The Children's Place Retail Stores, Inc., et al.*, No. C-22-08 (N.J. Super., Ch. Div.).

**q.** "Released Persons" means the Defendants, their respective families, parent entities, associates, affiliates or subsidiaries and each and all of their respective past, present or future officers, directors, stockholders, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, engineers, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, predecessors, successors and assigns, and any and all of Defendants' Affiliates.

**r.**    "Settlement Hearing" means the final hearing to be held by the Court to determine whether to approve the settlement of the Action as set forth herein.

**s.**    "Settling Parties" means, collectively, each of the Defendants and the Plaintiffs in the Action, on behalf of themselves and derivatively on behalf of TCP.

**t.**    "Summary Notice" means the Summary Notice Of Proposed Settlement Of Shareholder Derivative Litigation, Hearing Thereon, And Right To Appear (the "Summary Notice") to be published in *Investor's Business Daily*, substantially in the form of Exhibit D attached hereto or as modified pursuant to agreement of the Parties or order of the Court.

**u.**    "Unknown Claims" means any Released Claims which any Plaintiff, TCP, or any Current TCP Stockholder does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement.  Plaintiffs, TCP, or Current TCP Stockholders may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs, TCP, or Current TCP Stockholders shall expressly, upon the

Effective Date, be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims (including Unknown Claims, as defined herein), known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs acknowledge, and Current TCP Stockholders shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement, of which this release is a material and essential part, and expressly waive the benefits of (i) the provisions of Section 1542 of the California Civil Code, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

and (ii) any and all provisions or rights conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.

2.     **The Settlement**

a.     **Monetary Relief**

The filing of the Action was among the factors considered in the Board's decision to re-price certain of the Company's historical option grants and require payment to the Company of certain monies, and to take other remedial actions as described below.  Specifically, further to the Special Committee's recommendations and as announced in the January 31, 2007 press release, the Company and its former Chief Executive Officer ("CEO"), its former President, and its former Chief Administrative Officer ("CAO") agreed to amend each of such individuals' outstanding options that vested before 2005 to increase the exercise price to the trading price on the correct measurement date for the option grants for financial reporting purposes as determined by the Company. (Previously, in December 2006, each such individual agreed to increase to the same extent the exercise price of each outstanding option he held that had vested after 2005.)  In addition, with respect to one option held by one of such individuals that previously had been exercised, the individual agreed to pay to the Company

the difference between the exercise price and the higher amount of the trading price on the correct measurement date as determined by the Company.

Furthermore, pursuant to the Special Committee's recommendations, any non-management director who received an option grant that was not implemented in accordance with best practices has agreed to increase further the exercise price of such options to the average of the highest and lowest closing price of the shares during the remainder of the year of grant, even though such price may be above the trading price on the correct measurement date of the grant.

**b.      Corporate Governance Relief**

The filing of the Action was among the factors considered in the Board's decision to implement, *inter alia*, the following corporate governance and internal control reforms, which were recommended by the Special Committee, announced in the January 31, 2007 press release and thereafter adopted and implemented by the Board and management:

A.      The positions of Chair of the Board and CEO have been separated, and one of the independent directors was appointed to serve as non-executive Chair of the Board;

B.      The person who served as the Chair of the Board relinquished that position but retained his position as the Company's CEO (until September 24, 2007);

C.      The new position of Executive Vice President, Finance and Administration has been established, reporting to the CEO and the Board.  Responsibilities of this position include serving, along with the CEO, as principal

executive officer of the Company in making certifications of the Company's SEC reports and with respect to similar matters, and supervising the Company's finance, treasury, accounting, legal and human resource functions;

D.   The person who served as the Company's CAO, General Counsel and Secretary, relinquished these responsibilities, but he continued to serve as a Senior Vice President with supervisory responsibility for the Company's real estate, construction and facilities, store design, and non-merchandise purchasing (until July 20, 2007);

E.   The Company has retained a new General Counsel, has hired a Senior Vice President, Finance, who has become the Chief Financial Officer ("CFO"), and has filled substantially all open positions in the accounting department;

F.   The Board commenced a search to expand the Board to include two (2) new independent directors; and

G.   The Board has commenced a comprehensive review, with the assistance of independent counsel, of the Company's governance system and processes and its internal controls.

As announced in the January 31, 2007 press release and disclosed in the Form 10-K filed on December 5, 2007, under the supervision of the Compensation Committee of the Board, the Company has instituted more rigorous policies, procedures and practices governing the approval and granting of stock options and other equity incentive awards and related accounting and internal controls. The Board in June 2007 adopted a formal Policy Regarding Awards of Equity-Based Incentives to Executive Officers and Other Employees. Consistent

with that policy, procedures, practices and controls to the following effect will generally be applied to all such grants:

A.   Grants will be dated on the date that all required approvals have been obtained or a future date, not later than one month after the approval date, specified when approval is given.  The exercise price for each option granted will not be less than the closing price of the Company's stock on the date of grant;

B.   Equity grants will generally be approved only at duly convened, regularly scheduled meetings of the Compensation Committee or pursuant to a formal, limited delegation by the committee of grant-making authority to a committee of specified senior officers, as discussed below.  Minutes of such meetings will be kept which shall reflect the specifics of any equity grants approved at the meeting.  If in extenuating circumstances grants are to be made by unanimous written consent of the members of the Compensation Committee, the grant date will be no earlier than the date the last member signs the consent and the consent is received by the Company. The Company will no longer use "as of" dating for written consents approving equity grants;

C.   All grants made to executive officers will be specifically approved by the Compensation Committee as will grants to employees in other positions designated by the committee;

D.   If the making of any grants to non-executives is to be delegated to a committee of senior officers, the overall terms of such grants will be approved in advance by the Compensation Committee.  Terms will include annual limits as to the number of shares subject to all such delegated grants including a limit as to the number of shares available for grant to any particular employee and may include guidelines for grants that may be made to specified levels of employees.  Actions taken pursuant to

delegated authority will be required to be in writing, dated and signed by the executive(s) delegated authority to make the grant and will be regularly reported to the Committee;

E.   Annual grants will be considered and approved by the Compensation Committee at its meeting most closely preceding or following the first meeting of the Board following the filing of the Company's Annual Report on Form 10-K. The same grant date will apply to annual grants made to executive officers and other employees;

F.   Designated members of the Company's legal and accounting staffs will oversee the documentation, accounting and disclosure of all equity awards. Standard forms will be established and used for grant documentation (*e.g.*, option agreements and award notices);

G.   Recipients will be advised of awards within a reasonable time period after the grant date; and

H.   There will be no changes to grants after approval, other than to withdraw a grant to an individual in its entirety to reflect changes in circumstances between approval and issuance or to correct clear clerical errors. Any other changes will require approval in accordance with the requirements for making new grants.

Furthermore, as announced in the Form 10-K filed on December 5, 2007, no further equity grants were made until the new policies, procedures and controls were instituted. In addition, specifically to address matters identified by management in assessing the Company's controls in connection with the Form 10-K filed on December 5, 2007, as described in detail in Item 9A of the Form 10-K filed on April 2, 2008, the Company's management and its Audit Committee since

December 2007 have taken numerous steps to strengthen the Company's internal control over financial reporting.

## VI.   PRELIMINARY APPROVAL ORDER AND SETTLEMENT HEARING

6.1   Within five (5) days after execution of this Stipulation, the Settling Parties shall jointly submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit C attached hereto, requesting, *inter alia*, Preliminary Approval (as that term is defined in Section V hereof) of the settlement set forth in this Stipulation, and approval for the publication of the Notice and Summary Notice, substantially in the form of Exhibits B and D attached hereto, which shall include the general terms of the settlement set forth in the Stipulation and the time, date and location of the Settlement Hearing.

6.2   The Settling Parties shall request that, after the Notice and the Summary Notice are published, the Court hold a Settlement Hearing to determine whether to approve the settlement of the Action as set forth herein.

6.3   TCP shall assume administrative responsibility for publishing the Notice on Form 8-K, and Plaintiffs' Counsel shall assume administrative responsibility for publishing the Summary Notice in *Investor's Business Daily*. TCP shall be solely responsible for the costs and expenses of the publication of the Notice and the Summary Notice, and the administration of the Settlement.

## VII.  RELEASES

7.1    Upon the Effective Date (as defined herein), Plaintiffs and Plaintiffs' Counsel, on their own behalf and derivatively on behalf of TCP (as nominal defendant) and Current TCP Stockholders (in their capacity as stockholders only), shall (i) fully, finally, and forever release, relinquish and discharge all Released Claims (including Unknown Claims, as defined herein) against each and all of the Released Persons, (ii) permanently and forever be enjoined and barred from pursuing or prosecuting any Released Claims against any of the Released Persons, and from instituting or commencing any action or proceeding or otherwise suing any of the Released Persons for any Released Claims, and (iii) covenant not to sue any of the Released Persons for any Released Claims.

7.2    Upon the Effective Date (as defined herein), each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims, as defined herein) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.  Upon the Effective Date (as defined herein), each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever

released, relinquished and discharged nominal defendant TCP from any claims for

indemnification arising directly from the Action (and no other claims or potential

claims against nominal defendant TCP)..

## VIII. PLAINTIFFS' COUNSEL'S FEES AND REIMBURSEMENT OF EXPENSES

8.1    TCP, on behalf of all Defendants, has agreed, upon approval of

the Court, that in consideration of Plaintiffs' Counsel's efforts in filing,

prosecuting and settling the Action, Plaintiffs' Counsel shall be paid attorneys'

fees and reimbursement of expenses in the amount of $700,000 (the "Fee Award").

8.2    The Fee Award shall be paid to Plaintiffs' Counsel by TCP

and/or its agent within ten (10) days of entry of the Judgment, in a form

substantially similar to Exhibit A attached hereto, approving the settlement.  In the

event that the Effective Date does not occur, or the Judgment or the Order

approving the Fee Award is reversed or modified, or the Stipulation is canceled or

terminated for any other reason, and in the event that the Fee Award has been paid

to any extent, then Plaintiffs' Counsel shall within five (5) business days from the

event which precludes the Effective Date from occurring, refund to TCP the Fee

Award plus interest thereon.  To satisfy this obligation, Plaintiffs' Counsel has the

right to seek contribution from any law firm that receives a part of the Fee Award,

as a result of their participation in the settlement of the Action.  Plaintiffs' Counsel,

as a condition of receiving the Fee Award, on behalf of themselves and each

partner and/or shareholder of their respective law firms, agree that each of their respective law firms and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

8.3     Plaintiffs' Counsel shall be entitled to receive the Court-approved Fee Award whether or not objections are filed as to the settlement or the amount of the Fee Award.  Plaintiffs' Counsel shall allocate and distribute the Fee Award among the respective Plaintiffs' Counsel in a manner which, in Plaintiffs' Counsel's good faith determination, reflects each respective Counsel's contribution to the institution, prosecution, and resolution of the Action.

8.4     Defendants and Defendants' Affiliates shall have no responsibility for, and no liability whatsoever with respect to, the fee allocation among Plaintiffs' Counsel, and any other Person who may assert some claim thereto, of any portion of the Fee Award.

8.5     Based upon Plaintiffs' Counsel's belief that the Plaintiffs, through their prosecution of the Action, brought meaningful benefits to TCP and Current TCP Stockholders, Plaintiffs' Counsel intend to seek Court approval of incentive awards for each in the amount of $2,500 (the "Incentive Award").  The Incentive Award shall be paid exclusively out of the Fee Award, to the extent the

Fee Award is approved by the Court.  Defendants do not oppose the payment of

the Incentive Award.

## IX.   CONDITIONS OF SETTLEMENT AND EFFECT OF NON-APPROVAL, CANCELLATION OR TERMINATION

9.1   The Effective Date of the settlement shall be conditioned on the

occurrence of all of the following events:

A.   Execution of this Stipulation and the related Exhibits by Plaintiffs' Counsel and Defendants' Counsel;

B.   TCP's Board shall have approved the terms of the settlement;

C.   The Court has entered the Preliminary Approval Order, in a form substantially similar to Exhibit C attached hereto:

(i)   scheduling the Settlement Hearing;

(ii)   approving as to form and content the proposed Notice Of Proposed Settlement Of Derivative Litigation, Hearing Thereon, And Right To Appear (the "Notice") and Summary Notice Of Proposed Settlement Of Shareholder Derivative Litigation, Hearing Thereon, And Right To Appear (the "Summary Notice") substantially in the form attached hereto as Exhibits B and D, respectively;

(iii)   directing the publication of the Notice by TCP on Form 8-K, and further directing that the Summary Notice be published once in the national edition of *Investor's Business Daily*;

(iv)   finding that the publication of the Notice on Form 8-K and the publication of the Summary Notice in *Investor's Business Daily* constitute the best notice practicable under the circumstances and is due and sufficient notice of the matters set forth in the

Notices to all Current TCP Stockholders, pursuant to Fed. R. Civ. P. 23.1, and that the Notice and Summary Notice fully satisfy the requirements of due process and all applicable laws; and

(v)     providing that, pending final determination as to whether the settlement as set forth in this Stipulation should be approved, no Plaintiff or Current TCP Stockholder shall commence, prosecute, pursue or litigate any Released Claim against any Defendant, whether directly, derivatively, representatively or in any other capacity, and whether or not any such Current TCP Stockholder has appeared in the Action.

D.    The Court has entered the Judgment, in a form substantially similar to Exhibit A attached hereto:

(i)     approving the settlement as fair, reasonable and adequate, and directing the consummation and performance of the terms of this Stipulation;

(ii)    providing that Plaintiffs and all Current TCP Stockholders shall be deemed to have released any and all Released Claims in accordance with the terms of this Stipulation and the Judgment and shall be forever barred from commencing or prosecuting any action or proceeding against the Defendants asserting any or all Released Claims;

(iii)   dismissing the Action "with prejudice" and without costs to any party except as expressly provided herein;

(iv)   providing that the Judgment has become Final (as defined in Section V hereof), such that Plaintiffs and all Current TCP Stockholders, or any of them, their successors, heirs and assigns are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution of any action

asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any or all of the Defendants, which have been or could have been asserted, or which arise out of or relate in any way to the Action or are otherwise addressed in the release; and

(v)   reserving jurisdiction over consummation, performance, enforcement and administration of the Settlement.

9.2   If all of the conditions specified in ¶ 9.1 are not satisfied, then the Stipulation shall be canceled and terminated, unless Plaintiffs' Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

9.3   If the Effective Date does not occur, or if the Stipulation is not approved by the Court or the settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action as of May 21, 2008.  In such event, the terms and provisions of the Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment or Order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc.*

## X.   MISCELLANEOUS PROVISIONS

10.1   The Settling Parties (a) acknowledge that it is their intent to consummate this agreement, and (b) agree to cooperate to the extent reasonably

necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

10.2   The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Action. Accordingly, the Settling Parties agree that the terms of the settlement reflect a good faith settlement of the claims asserted in the Action, reached voluntarily after consultation with experienced counsel.

10.3   Neither the Stipulation nor the settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or invalidity of any Released Claim, or of any wrongdoing or liability or lack thereof of the Defendants and Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission or lack thereof of any of the Defendants and Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Defendants and the Released Persons may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other

theory of claim preclusion or issue preclusion or similar defense or counterclaim.
Defendants have denied and continue to deny each and all of the claims alleged in
the Action.  Plaintiffs or any Current TCP Stockholder may file the Stipulation in
any proceeding brought to enforce any of its terms or provisions.  The Settling
Parties and their counsel, and each of them, agree, to the extent permitted by law,
that all agreements made and orders entered during the course of the Action
relating to the confidentiality of information shall survive this Stipulation.

10.4   All of the Exhibits to the Stipulation are material and integral
parts hereof and are fully incorporated herein by reference.

10.5   The Stipulation may be amended or modified only by a written
instrument signed by or on behalf of all Settling Parties or their respective
successors in interest.  TCP will obtain the written consent of its insurer(s) to any
modification or amendment which may affect the rights and duties of the
insurer(s).

10.6   The Stipulation and the Exhibits attached hereto constitute the
entire agreement between Plaintiffs and Defendants and no representations,
warranties or inducements have been made to any party concerning the Stipulation
or its Exhibits other than the representations, warranties and covenants contained
and memorialized in such documents.  Except as otherwise provided herein, each
party shall bear its own costs.

10.7   Plaintiffs' Counsel, derivatively on behalf of TCP and Current TCP Stockholders, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by Current TCP Stockholders pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of Current TCP Stockholders which they deem appropriate.

10.8   Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.9   The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

10.10 The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.11 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation.

10.12 The rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New Jersey without giving effect to that State's choice of law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of May 21, 2008.

*Counsel for Plaintiffs*

*Counsel for Individual Defendants Charles K. Crovitz, Malcolm L. Elvey, Robert Fisch, Clark Hinkley, Sally Frame Kasaks, John F. Megrue, David J. Oddi and Nominal Defendant The Children's Place Retail Stores, Inc.*

By: _____
Peter S. Pearlman
Jeffrey W. Herrmann
COHN LIFLAND PEARLMAN
   HERRMANN & KNOPF LLP
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Tel.:  (201) 845-9600
Fax:  (201) 845-9423

*-- and --*

Robert B. Weiser
Brett D. Stecker
THE WEISER LAW FIRM, P.C.
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Tel.:  (610) 225-2677
Fax:  (610) 225-2678

By: _____
Jack Wenik
Paula Tuffin
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ  07102
Tel.:  (973) 643-7000
Fax:  (973) 643-6500

*-- and --*

Jonathan D. Polkes
Anthony J. Albanese
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Tel.:  (212) 310-8000
Fax: (212) 310-8007

*Counsel for Plaintiffs*

*Counsel for Individual Defendants Charles K. Crovitz, Malcolm L. Elvey, Robert Fisch, Clark Hinkley, Sally Frame Kasaks, John F. Megrue, David J. Oddi and Nominal Defendant The Children's Place Retail Stores, Inc.*

By: _____

Peter S. Pearlman
Jeffrey W. Herrmann
COHN LIFLAND PEARLMAN
   HERRMANN & KNOPF LLP
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Tel.: (201) 845-9600
Fax: (201) 845-9423

*-- and --*

Robert B. Weiser
Brett D. Stecker
THE WEISER LAW FIRM, P.C.
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Tel.: (610) 225-2677
Fax: (610) 225-2678

By: _____

Jack Wenik
Paula Tuffin
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Tel.: (973) 643-7000
Fax: (973) 643-6500

*-- and --*

Jonathan D. Polkes
Anthony J. Albanese
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Individual Defendant*
*Ezra Dabah*

*Counsel for Individual Defendants Mario*
*A. Ciampi, Richard Flaks, Neal Goldberg,*
*Amy Hauk, Nina L. Miner, Mark L. Rose,*
*Stanley Silverstein and Seth L. Udasin*

By: _____

David A. Kotler
DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ 08543
Tel.: (609) 620-3200
Fax: (609) 620-3259

Robert J. Jossen
Michael J. Gilbert
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112-2200
Tel.: (212) 698-3500
Fax: (212) 698-3599

By: _Jack Wenik_____

Jack Wenik
Paula Tuffin
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Tel.: (973) 643-7000
Fax: (973) 643-6500

*-- and --*

Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York 10036
Tel.: (212) 735-3000
Fax: (212) 735-2000

*Counsel for Individual Defendant
Ezra Dabah*

By: _____
David A. Kotler
DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ 08543
Tel.:  (609) 620-3200
Fax:  (609) 620-3259


Robert J. Jossen
Michael J. Gilbert
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112-2200
Tel.:  (212) 698-3500
Fax:  (212) 698-3599

*Counsel for Individual Defendants Mario
A. Ciampi, Richard Flaks, Neal Goldberg,
Amy Hauk, Nina L. Miner, Mark L. Rose,
Stanley Silverstein and Seth L. Udasin*

By: _____
Jack Wenik
Paula Tuffin
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ  07102
Tel.:  (973) 643-7000
Fax:  (973) 643-6500

*-- and --*

Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York 10036
Tel.:  (212) 735-3000
Fax:  (212) 735-2000

***Counsel for Individual Defendant
Steven Balasiano***

By: _____

Robert Novack
Kenneth J. Cesta
EDWARDS ANGELL PALMER &
 DODGE LLP
One Giralda Farms
Madison, NJ 07940
Short Hills, NJ 07078
Tel.: (973) 520-2300
Fax: (973) 520-2600

*-- and --*

Lawrence J. Zweifach
Karen Crupi
HELLER EHRMAN LLP
7 Times Square
New York, NY 10036
Tel.: (212) 832-8000
Fax: (212) 763-7600